## Roy *et al. versus* Townsend *et al.*

1. In 1853 proceedings in partition in the Orphans' Court were had under which the land was sold to one of the heirs. On his application representing that he was attorney in fact for three of the heirs, and empowered to receive their shares, the Orphans' Court, in the same year, authorized the trustee, who sold the land to convey it to the purchaser, upon payment of the shares of all the heirs except his own and his three constituents. In 1870 one of the three heirs, alleging that he had never given the power of attorney nor received his share of the purchase-money, claimed that the purchaser was his trustee, and that he was entitled to his share of the land. *Held*, that the court on consideration of the application having made the order which was unappealed from, vacated or reversed, it was conclusive that the purchaser was empowered to receive the money of the other three heirs.

2. If the purchaser had falsely represented that he had the authority to receive their money, it would be a trust, if any, for the heirs implied from their payment of the purchase-money, and would be within the limitation of the 6th section of the Act of April 22d 1856.

3. In this case there was no trust *ex maleficio*, the title having been vested in the purchaser by valid sale under the decree of the Orphans' Court; the injury to the three heirs was simply the use of their money to pay for the title.

February 25th 1876. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia :* Of July Term 1873, No. 53.

This was an ejectment commenced April 1st 1870, by Rachel M. W. Townsend, Wilson Moore Jenkins and Jacob M. Ellis, executors, &c., of John Wilson Moore, deceased, against Michael Roy, Patrick McAdams, John Payne and E. D. Rush. The real estate in controversy was two brick messuages and a frame messuage situate on the north side of Shippen street, between Fifth and Sixth streets, Philadelphia, being the same premises which Gilbert S. Parker, trustee, conveyed to the said Michael Roy on the 14th of June A. D. 1853.

The case was tried January 20th 1873, before Lynd, J.

On the trial the plaintiff gave in evidence certain proceedings in the Orphans' Court of Philadelphia in relation to the estate of Bernard Roy, deceased, viz. :—

July 2d 1852 petition of Bernard Keenan, setting forth that Bernard Roy died in 1831, intestate, without issue, leaving his mother and his widow ; also three brothers, Michael, James and Alexander, and four sisters, Catharine wife of Edward Keenan, Mary wife of —— McAnally, Margery wife of Patrick Murray, and Rosanna wife of Charles Cummings, and seised of the land in controversy, and other land; that the mother and widow of the intestate afterwards died; that in 1847 Catharine Keenan also died, leaving five children, viz. : Bernard the petitioner, Edward, Michael, Sarah and Francis, the four children last named being minors and having the petitioner for their guardian.   The prayer was for partition of the decedent's real estate.   An inquest was accordingly awarded.   On the 17th of September 1852 the inquest returned that the premises could not be divided without prejudice, &c., and returned a valuation.   On the petition of Bernard Keenan the court awarded a rule on the heirs to accept or refuse the estate at the valuation, and in case of refusal to show cause why the same should not be sold.   Some of the heirs having refused to accept, and the others not appearing after due notice, at the return of the rule, and it appearing to the court that there was no administrator, &c., of Bernard Roy, the court, on the 7th of January 1853, appointed Gilbert S. Parker trustee, to make sale of the premises.   On the 18th of February 1853, the trustee returned that he had sold the part of the premises in controversy to Michael Roy for $3000, and the other part to Michael Ferry for $1450 ; on the same day the sales were confirmed.   On the 15th of April 1853, Michael Roy presented a petition to the Orphans' Court, setting forth his purchase of the premises, and that he was attorney in fact for James Roy, Alexander Roy and Charles Cummings and Rose his wife, to act for them in the premises, and to execute discharges for their shares of the estate ; he prayed the court to make an order directing the trustee to execute to him a deed for the premises purchased by him on his payment of so much of the purchase-money as was distributable to the heirs not represented by him, together with such sum as might be necessary to meet a proportionate share of the expenses, &c., on the execution by him for himself, and as attorney in fact of proper acquittances. The Orphans' Court thereupon appointed W. R. Morris, Esq., auditor to ascertain and report the names of the distributees, the amount payable to each, and the amount, if any, payable to liens on the funds.

The auditor reported that after giving notice by publication in two newspapers in Philadelphia, he sat for the performance of his

[Roy v. Townsend.]

duties. There were present at the hearing Charles Gibbons, Esq., attorney for Michael Roy in his own right and as attorney in fact for James Roy, Rose Cummings and Alexander Roy; Margaret Murray and her husband Patrick Murray; G. W. Thorn, Esq., attorney for Mary McAnally, Bernard Keenan in his own right and as guardian for his minor brothers and sister. The auditor reported that the balance after payment of expenses, &c., arising from the sale of both lots, be distributed to Michael Roy, Alexander Roy, James Roy, Margery Murray, Rose Cummings and the five children of Catharine Keenan, deceased; each whole share being $495.07. This report was confirmed nisi June 3d 1853, and the trustee was directed to deliver a deed for the premises to Michael Roy on his payment of so much of the purchase-money as was distributable to the heirs not represented by Michael Roy. On the 14th of June Parker, the trustee, delivered a deed for the premises to Michael Roy; all the Orphans' Court proceedings were recited in the deed. On the same day Michael Roy gave a mortgage on the premises to John Wilson Moore to secure the payment of $2250.

There was evidence that Michael Roy had never been made attorney in fact for the heirs whom he professed to represent, and that he had not paid them the sums awarded by the auditor.

The mortgage was sued out by the executors of the mortgagee and bought by them. On the 23d of March 1864, Alexander Roy brought an ejectment for the premises, and on the 5th of September 1864 he recovered judgment; an habere facias was issued and Alexander Roy put into possession. The plaintiffs then brought this ejectment against the defendants as the persons in possession and Alexander Roy, their landlord, was permitted to come in and defend.

The defendants requested the court to charge :—

1. That if they find from the evidence that Michael Roy was not the attorney in fact for Alexander Roy, James Roy, and Rose Cummings, and the deed was made to him. by an order of the Orphans' Court without paying any money therefor, under the evidence in this case the plaintiffs can recover only the one undivided third part of the property mentioned in the writ.

2. That Michael Roy, by taking the deed from Gilbert S. Parker, trustee, under his petition in the Orphans' Court when the sale was made under the proceedings in partition, took the same in trust for his brothers and sisters, except that part to which he was entitled as one of the heirs-at-law of Bernard Roy, deceased.

3. That there being no evidence in this cause that Michael Roy ever paid over to his brothers and sisters their share of the estate awarded to them under the proceedings in partition, they have a legal right to look to the property thus taken by him in trust for them.

[Roy *v.* Townsend.]

4. That the proceedings in the Orphans' Court, from whence the mortgagee derived his title, were notice to him of the trust upon which Michael Roy held the title, and that under the facts proved in this cause he is not an innocent purchaser without notice, therefore can recover but the one undivided third part of the property, mentioned and described in the writ.

The court directed a verdict for the plaintiffs, subject to a reserved question, whether under the evidence there was a resulting trust in Alexander and James Roy and Rose Cumming.

The defendant obtained a rule for a new trial and for judgment on the point reserved

The court (Lynd, J.) discharged the rule and entered judgment for the plaintiff, delivering the following opinion :—

" This was an ejectment. The title of the plaintiff was under sale in partition in the Orphans' Court of the estate of Michael Roy, deceased. The proceedings were regular and usual, except that the purchaser instead of paying to the trustee appointed by the court to make the sale and conveyance the entire purchase-money, paid, by leave of court, so much of said sum as was not distributable to himself and three other heirs of Michael Roy, deceased, whom as was alleged he represented. The defendant maintained that as to these three heirs, each of whom was entitled to one-seventh, there was a resulting trust; and that the verdict should have been in favor of the plaintiff for an undivided four-sevenths only of the premises. We are of opinion that the purchaser took by the sale a legal title to the whole property, and any resulting trust for other parties must be asserted by them in the appropriate mode, and within the time limited by the Act of April 22d 1856.

" A defendant in ejectment may set up an outstanding title in a third person, but it must be an outstanding legal title. That the plaintiff held the legal title in trust for such third person, certainly could not avail the defendant. But the defendant happens to be one of the three heirs whom the purchaser, at the sale in partition, claimed to represent, as above stated; and he maintains that he can set up at least his own equitable title to the one-seventh of said property ; and hence the verdict for the plaintiff should at most have been for an undivided six-sevenths. Unfortunately for this position of the defendant his own evidence discloses that he came into possession of the premises by proceedings in ejectment, commenced on the 23d day of March A. D. 1864, in which he claimed the whole premises. But the deed in partition was delivered and recorded June 14th 1853, and the resulting trust in favor of defendant could not therefore, under the provisions of the Act of 1856, be enforced after the 22d day of April 1858 ; primâ facie, therefore, the ejectment commenced in 1864 was too late ; the record was not of itself evidence that the action was to enforce the said resulting trust, nor that the possession acquired under said

[Roy *v.* Townsend.]

action was acquired in pursuance of said trust. On the contrary, as he claimed the whole premises when the resulting trust in his favor was to one-seventh only, it is evident from the record that his action was not brought to enforce the resulting trust. Upon all the evidence then the defendant is not a *cestui que trust* in possession : his possession is that of a mere stranger, and he must yield to the plaintiff's legal title. At the trial, the question as to whether there was a resulting trust in favor of the defendant was reserved. The views just expressed show that the reservation was immaterial. Hence the motion for judgment upon the point reserved is dismissed, and the rule for a new trial is discharged."

The defendants took a writ of error ; they assigned for error :—

1. Dismissing the motion on the point reserved.

2. Not rendering judgment for the defendants.

3. Deciding the trust was barred by the Statute of Limitations of 1856.

5. Directing the jury to find for plaintiffs.

7. Entering judgment for the plaintiffs for the whole property mentioned in the writ.

—— *Myers* and *A. V. Parsons*, for plaintiff in error.— Michael Roy's acts were fraudulent and vitiated the whole transaction ; Murphy *v.* Hubert, 7 Barr 429; Martin *v.* Gernandt, 7 Harris 124. The Act of 1856 therefore does not apply : Biddle *v.* Moore, 3 Barr 161 ; Jackson *v.* Summerville, 1 Harris 359; Harris *v.* Tyson, 12 Id. 347; Miller's Appeal, 6 Casey 478 ; Rockafellow *v.* Baker, 5 Wright 319 ; Graham *v.* Pancoast, 6 Casey 89 ; Marple *v.* Kussart, 3 P. F. Smith 351.

*C. W. Katz* and *C. Gibbons*, for defendants in error, were stopped by the court.

Judgment was entered in the Supreme Court, March 8th 1875,

PER CURIAM.—The title of the plaintiff vested in pursuance of a sale and confirmation of the Orphans' Court, under proceedings in partition. No attempt was made to impeach the sale for fraud, and the decree remains unappealed from and unreversed. It is obvious, therefore, that the entire title was fully vested in the purchaser at the Orphans' Court sale. The purchaser procured an order of the court to enable him to use his own share of the proceeds of sale, and the shares of three others for whom he was attorney in fact, as he set forth in his petition, in payment of the purchase-money. It is claimed that this made him a trustee of the title for these three heirs, on the ground that he falsely represented himself to be their agent and attorney. The deed was made to him in 1853, by the trustee appointed by the court. There are two conclusive answers to this claim. In the first place the court

[Roy *v.* Townsend.]

having considered his petition and made the order which has never been appealed from, or vacated or reviewed, the fact must be taken to be true, certainly without evidence to disprove it, that he was empowered to receive the money. Sixteen years had elapsed from the time of the decree until this suit was brought, and no steps had been taken in the Orphans' Court to vacate or review its order. Clearly therefore every presumption was in favor of the authority of the purchaser to retain these shares. But if it were even conceded that he had no authority and that his petition falsely represented his right to receive the money; at best, if any trust could arise, it would be a trust implied from the payment of so much of the purchase-money with the funds of these three heirs, and this would bring the case within the limitation in the 6th section of the Act of 22d April 1856. No trust *ex maleficio* arose, for the title vested by a lawful and valid sale under the Orphans' Court decree, and the injury to these three heirs was simply in the use of their money to pay for the title.

Judgment affirmed.